IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

UNITED STATES OF AMERICA       :
                               :
     v.                        :       1:07-cr-276-1
                               :
BERNARD NORVELL BARR           :


**MEMORANDUM OPINION AND ORDER**

**OSTEEN, JR., District Judge**

Presently before this court are several motions filed by Defendant Bernard Norvell Barr ("Defendant"), (Docs. 137, 139, 145, 148, 153). In his latest motion, (Doc. 153), Defendant adopts and incorporates each prior motion by reference, (see id. at 7), and thus this court will refer throughout its analysis only to Docket Entry 153. In this motion, Defendant seeks a reduction of his sentence based on two statutes: 18 U.S.C. § 3582(c)(1)(B) based on the First Step Act, and 18 U.S.C. § 3582(c)(2) based on retroactive amendments to the United States Sentencing Guidelines. (Id. at 1.)

I.   **BACKGROUND**

Defendant was indicted on thirteen counts on August 28, 2007. (Doc. 6.) On September 25, 2007, Defendant pleaded guilty to Count One: conspiracy to distribute 50 grams or more of a mixture and substance containing a detectable amount of cocaine base ("crack"), 5 kilograms or more of a mixture and substance

containing a detectable amount of cocaine hydrochloride, and quantities of a mixture and substance containing a detectable amount of marijuana, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A), and Count Two: conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h). (Doc. 6 at 1-4; Doc. 11 at 2.) Defendant was sentenced to 360 months imprisonment as to Count One and 240 months imprisonment as to Count Two, to run concurrently, and judgment was entered on April 3, 2008. (Doc. 17 at 1-2.)

This court arrived at a sentence of 360 months through the following steps. First, because Defendant pleaded guilty to a violation of 21 U.S.C. § 841(b)(1)(A) and had a prior felony drug conviction, his statutory imprisonment range was 240 months to life. See 21 U.S.C. § 841(b)(1)(A) (Effective: July 27, 2006 to April 14, 2009). Second, Defendant's original Sentencing Guidelines[1] calculation resulted in a Guideline range of 360 months to life, based on a total offense level of 37[2] and a criminal history category VI. (See Doc. 123 ¶ 116; Doc. 27 at

_____

[1] The 2007 edition of the United States Sentencing Guidelines were used for Defendant's Guideline range computation. (See Doc. 123 ¶ 66.)
[2] The United States Probation Office calculated Defendant's total offense level as 39, (Doc. 123 ¶ 116), however after a drug weight stipulation by the parties, (Doc. 15), the revised total offense level was 37, (see Doc. 27 at 4).

- 2 -

4.) This court imposed a sentence at the low end of the Guideline range at 360 months. (Doc. 27 at 18.)

## II. **ANALYSIS**

Defendant is eligible for reductions in his sentence pursuant to both 18 U.S.C. § 3582(c)(2) and § 3582(c)(1)(B). Defendant argues for the application of either one or the other of these statutes; however, after individual analysis of each, this court considers both pathways to relief holistically to determine the appropriate reduction. Because both pathways require this court to consider the § 3553(a) factors, this court will analyze those factors at the end of its analysis, for purposes of both statutes. See 18 U.S.C. § 3582(c)(2) (instructing courts to consider the § 3553(a) factors); see United States v. Swain, 49 F.4th 398, 400 (4th Cir. 2022) (requiring district courts to consider the § 3553(a) factors in First Step Act proceedings).

### A. **18 U.S.C. § 3582(c)(2)**

Defendant moves for a reduction in his sentence pursuant to 18 U.S.C. § 3582(c)(2), which provides that

> in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent

- 3 -

> that they are applicable, if such a reduction is
> consistent with applicable policy statements issued by
> the Sentencing Commission.

18 U.S.C. § 3582(c)(2). The Sentencing Commission's policy statement in turn instructs district courts to "determine the amended guideline range that would have been applicable to the defendant if the [relevant amendments] had been in effect at the time the defendant was sentenced." U.S.S.G. § 1B1.10(b)(1) (2024). Beyond the application of retroactive Guideline amendments, however, the court must "leave all other guideline provisions that were applied when the defendant was sentenced and shall leave all other guideline application decisions unaffected." Id. Courts "shall not reduce the defendant's term of imprisonment . . . to a term that is less than the minimum of the amended guideline range." Id. § 1B1.10(b)(2)(A).

### 1. Amendment 821

Defendant argues that Amendment 821 to the U.S.S.G. would reduce his criminal history score. (Doc. 153 at 21.) Amendment 821 modified the application of status points imposed pursuant to U.S.S.G. § 4A1.1(d) and has been given retroactive effect pursuant to U.S.S.G. § 1B1.10(d). Defendant is eligible for the application of this Amendment; however under § 3582(c)(2), his criminal history category would not change from a VI, because he was characterized as a career offender under § 4B1.1(a) at the

- 4 -

time of sentencing and this court, on a § 3582(c)(2) motion, must leave all non-retroactive guidelines application decisions "unaffected." See 18 U.S.C. § 3582(c)(2); U.S.S.G. § 1B1.10(b)(2)(A) (2024).

##    2.    **Amendment 782**

Defendant also argues that Amendment 782 to the Sentencing Guidelines would reduce his Guideline calculation. (Doc. 153 at 22.) Amendment 782 altered the base offense levels for various drug trafficking offenses and was made retroactive by U.S.S.G. § 1B1.10(d). See U.S.S.G. App. C, amend. 782 (2014).[3] Based on the stipulated drug weight, (21 pounds of marijuana and 82 kilograms of cocaine hydrochloride), the 2007 Guidelines dictated a base offense level of 36. (See Doc. 123 ¶¶ 22–47; see generally Doc. 15; see Doc. 136 at 4); see U.S.S.G. § 2D1.1(c)(2) (2007). But with the application of Amendment 782, this drug weight would only yield a base offense level of 34. See U.S.S.G § 2D1.1(c)(3) (2014). Thus, with the offense level adjustments applied to Defendant's base offense level, (+4 for role and -3 for acceptance of responsibility), (Doc. 123 ¶¶ 71, 75), Defendant's total offense level, with the application of Amendment 782, results in a 35.

---

[3] Amendment 782 was first implemented in the 2014 edition of the Guidelines.

Case 1:07-cr-00276-WO    Document 158    Filed 04/22/25    Page 5 of 22

**B.   <u>First Step Act</u>**

Defendant also moves for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(B), which permits a district court to modify a term of imprisonment "to the extent . . . expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B). Defendant relies on the First Step Act of 2018 to support his sentence reduction. (Doc. 153 at 1.)

The Fair Sentencing Act of 2010 amended 21 U.S.C. § 841(b)(1) to rectify the crack cocaine and powder cocaine sentencing disparity and the First Step Act of 2018 made these key changes retroactive, <u>United States v. Wirsing</u>, 943 F.3d 175, 178–81 (4th Cir. 2019), <u>as</u> <u>amended</u> (Nov. 21, 2019), such that individuals who were sentenced "under a starkly disparate regime," could "seek relief that has been available to later-sentenced defendants." <u>Id.</u> at 186. Defendant is eligible for First Step Act relief because he is "serving [a] sentence for a violation of 21 U.S.C. § 841(b)(1)(A)(iii)," and is "not excluded pursuant to the expressed limitations in Section 404(c) of the First Step Act." <u>Id.</u>; <u>see</u> <u>United States v. Gravatt</u>, 953 F.3d 258, 264 (4th Cir. 2020) (finding that a defendant convicted of multiple controlled substance offenses, only some of which are covered by the First Step Act, is still eligible for First Step Act relief).

- 6 -

When "exercising their discretion under the First Step Act," district courts must first "recalculate the movant's Guidelines range 'only to the extent it adjusts for the Fair Sentencing Act.'" United States v. Troy, 64 F.4th 177, 184 (4th Cir. 2023) (citation omitted). Then, district courts "may (and when raised by the parties, must) consider other legal and factual changes when deciding whether to impose a reduced sentence." Id.; see also Concepcion v. United States, 597 U.S. 481, 500–02 (2022). Here, application of the First Step Act does not alter Defendant's statutory sentencing range, as he would still be subject to § 841(b)(1)(A)'s penalties because of the quantity of powder cocaine to which he pleaded. (See Doc. 11 at 1–2 (pleading to five kilograms or more of cocaine hydrochloride)); see 21 U.S.C. § 841(b)(1)(A)(ii) (Effective: July 27, 2006 to April 14, 2009). Accordingly, the First Step Act also does not alter Defendant's Guideline range.

Although his statutory range and Guideline range remain unchanged, a First Step Act motion pursuant to 3582(c)(1)(B) also permits a district court to consider intervening changes of law and fact. Defendant asks this court to consider several specific intervening changes in determining the extent of a possible reduction under this statute 1) statutory changes, 2)

Sentencing Guidelines changes, and 3) factual changes affecting the 3553(a) factors. (Doc. 153 at 13-14, 26.)

### 1.  **Statutory Changes**

At the time Defendant was sentenced, 21 U.S.C. § 841(b)(1)(A) imposed a statutory enhancement for defendants with a "prior conviction for a felony drug offense." (Doc. 153 at 14); see 21 U.S.C. § 841(b)(1)(A) (Effective: July 27, 2006 to April 14, 2009). However, the current version of § 841(b) only imposes enhancements for a prior "serious drug felony" or a "serious violent felony." See 21 U.S.C. § 841(b)(1)(A) (current). Defendant contends that based on this statutory change, if sentenced today, none of his prior drug convictions would justify an enhancement. (Doc. 153 at 15.)

21 U.S.C. § 802(58) defines "serious drug felony" as "an offense described in section 924(e)(2) of title 18 for which — (A) the offender served a term of imprisonment of more than 12 months; and (B) the offender's release from any term of imprisonment was within 15 years of the commencement of the instant offense." 21 U.S.C. § 802(58). In accordance with these definitions, Defendant has no prior "serious drug felonies,"

- 8 -

because he has no drug felonies for which he _served_ a term of imprisonment of more than 12 months. (See Doc. 153-1 at 2.)[4]

Accordingly, had Defendant been sentenced today, he would not have been subject to 21 U.S.C. § 841(b)(1)(A)'s statutory enhancement as he did not have any prior "serious drug felony" or "serious violent felony" convictions. His statutory sentencing range would thus be 120 months to life. 21 U.S.C. § 81(b)(1)(A) (current).

## 2. Sentencing Guidelines Changes

Defendant also points this court to 1) what he contends was an error in his original Guideline calculation and 2) a non-retroactive change[5] in the Sentencing Guidelines that would reduce his Guideline range if sentenced today.

### i. Criminal History Points

Defendant argues that his presentence report "erred in assigning three criminal history points based on the 1995 [(felony)] Conviction" because he was a juvenile at the time of the offense. (Doc. 153 at 19.) This argument is without merit —

_____

[4] Nor do any of his convictions qualify as a prior "serious violent felony," which is also defined, as relevant here, as "an offense . . . for which the offender served a term of imprisonment for more than 12 months." 21 U.S.C. § 802(59)(A). (See generally Doc. 153-1.)

[5] Defendant also asks this court to consider the retroactive Guidelines amendments addressed supra Section II.A. in support of a sentence reduction under § 3582(c)(1)(B). (Doc. 153 at 24.)

while Defendant was under eighteen at the time of the felony conviction, he was convicted as an adult. (See Doc. 123 at 21 (listing "Adult Criminal Convictions").) The 2007 edition of the Sentencing Guidelines Manual is clear that for offenses committed prior to age eighteen, "[i]f the defendant was convicted as an adult and received a sentence of imprisonment exceeding one year and one month, add **3** points under § 4A1.1(a) for each such sentence." U.S.S.G. § 4A1.2(d)(1) (2007).[6]

### ii. <u>Career Offender Designation</u>

Defendant also highlights a non-retroactive Guidelines change in career offender designations pursuant to U.S.S.G. § 4B1.1(a). (Doc. 153 at 17–19.) The 2007 edition of the Guidelines Manual's § 4B1.1(a) defined a career offender as follows

> [a] defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1(a) (2007). The Guidelines defined a "crime of violence" as

> any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that –

---

[6] This provision remains the same in the 2024 Sentencing Guidelines. <u>See</u> U.S.S.G. § 4A1.2(d)(1) (2024).

> (1) has as an element the use, attempted use, or
> threatened use of physical force against the
> person of another, or
>
> (2) is burglary of a dwelling, arson, or
> extortion, involves use of explosives, or
> otherwise involves conduct that presents a
> serious potential risk of physical injury to
> another.

U.S.S.G. § 4B1.2(a) (2007). In 2016, however, the Sentencing Commission amended this definition to no longer include the phrase "or otherwise involves conduct that presents a serious potential risk of physical injury to another," in light of the Supreme Court's ruling in Johnson v. United States, 576 U.S. 591 (2015), which held an identical phrase within the Armed Career Criminal Act unconstitutionally vague. See U.S.S.G. App. C., amend. 798 (2016).

When sentenced, Defendant was classified under the Guidelines as a career offender based on his prior convictions for "(1) Felony Possession with Intent to Sell and Deliver Marijuana and (2) Felony Attempt Assault With a Deadly Weapon Inflicting Serious Injury." (Doc. 123 ¶ 74.) Defendant argues, however, that in light of Amendment 798, if sentenced today, he would not be considered a career offender because his Felony Attempt Assault with a Deadly Weapon Inflicting Serious Injury, ("AWDWISI") would not be considered a "crime of violence." (Doc. 153 at 17-19.)

- 11 -

Because Defendant's AWDWISI conviction does not fall within the Guidelines' enumerated list of "crimes of violence," see U.S.S.G. § 4B1.2(a)(2) (2024), this court must determine if it "has as an element the use, attempted use, or threatened use of physical force against the person of another," see id. § 4B1.2(a)(1). "In making that assessment, courts apply a categorical approach, asking whether an offense's statutory elements 'necessarily require[ ] the use, attempted use, or threatened use of . . . physical force.'" United States v. Mack, 56 F.4th 303, 305 (4th Cir. 2022) (citation omitted). This court must "ask two questions about this statute," first, "whether the crime requires conduct 'directed or targeted at another' and thus excludes acts committed recklessly," and second, "whether the defendant must have used, attempted to use, or threatened to use 'violent force,' defined as 'force capable of causing physical pain or injury to another person.'" Id. at 306 (citations omitted).

AWDWISI fails on prong one — as described by a court within this circuit, "because the state may obtain an AWDWISI conviction upon a showing of a mental state less than recklessness, AWDWISI categorically is not a 'violent felony,' regardless of how violent defendant's own conduct may have been." United States v. Geddie, 125 F. Supp. 3d 592, 600-01

- 12 -

(E.D.N.C. 2015) (applying the categorical approach to AWDWISI
for purposes of ACCA); see also United States v. Ormond, No.
5:16-CR-80-FL-1, 2017 WL 1316976, at *2 (E.D.N.C. Apr. 7, 2017);
see also United States v. Mill, 917 F.3d 324, 329 (4th Cir.
2019) (expressing "doubts about whether the district court
correctly classified [defendant's] North Carolina assault
conviction under § 14-32(b) as one for a crime of violence under
the current version of the Sentencing Guidelines").

Additionally, the offense of conviction — conspiracy to
distribute controlled substances, is not considered a
"controlled substance offense" within the meaning of the
Sentencing Guidelines, see United States v. Norman, 935 F.3d
232, 237–38 (4th Cir. 2019), which is required for a Defendant
to qualify as a career offender, see U.S.S.G. § 4B1.1(a)
(requiring the instant offense to be a felony that is either a
crime of violence or a controlled substance offense).

As a result, this court agrees with Defendant that today he
would not be considered a career offender under § 4B1.1(a) and
thus would have been a criminal history category V, instead of
VI. (See Doc. 123 ¶ 93.)

Based on the aforementioned intervening legal changes,
including Amendment 782 addressed supra Section II.A.2., if
Defendant had been sentenced today, he would not have been

- 13 -

subject to a statutory enhancement and thus his statutory range

for a violation of § 841(b)(1)(A) would be 120 months to life.

His Guideline range would be 262-327 months, based on an offense

level of 35 and a Criminal History Category V.[7]

## C.  § 3553(a) Factors

Defendant also asks this court to consider the § 3553(a)

factors, which he argues weigh in favor of a reduction in his

sentence.[8] Section 3553(a) requires a court to impose a sentence

that is "sufficient, but not greater than necessary" to comply

with the statutory purposes of sentencing. 18 U.S.C. § 3553(a).

This court must consider —

> (1) the nature and circumstances of the offense and the
> history and characteristics of the defendant;
>
> (2) the need for the sentence imposed –
>
>> (A) to reflect the seriousness of the offense, to
>> promote respect for the law, and to provide just
>> punishment for the offense;

---

[7] This court notes that although he is also eligible for the application of Amendment 821, it would have no effect on his Criminal History Category. If calculated today, Defendant would have 9 criminal history points. Because he committed the offense at issue while on probation, he would also be subject to a +1 criminal history point enhancement. See U.S.S.G. § 4A1.1(e) (2024) ("Add **1** point if the defendant (1) receives 7 or more points . . . and (2) committed the instant offense while under any criminal justice sentence, including probation . . . ."). Accordingly, Defendant would have 10 criminal history points, resulting in a Criminal History Category V. See Id., Ch. 5, Pt. A (Sentencing Table).

[8] As explained above, both §§ 3582(c)(2) and (c)(1)(B) permit a court to consider the § 3553(a) factors.

> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentences and the sentencing range established for [the applicable offense category as set forth in the guidelines] . . . ;
>
> (5) any pertinent policy statement . . . by the Sentencing Commission . . . ;
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

Id. As detailed below, these factors weigh against a substantial reduction in Defendant's sentence.

Defendant argues first that "the nature and circumstances of the 21 U.S.C. § 841(b)(1) offense for which Barr was convicted strongly suggest that a reduced sentence is appropriate and consistent with Congressional intent," given the Fair Sentencing and First Step Acts' goals of rectifying the disparity between crack cocaine and powder cocaine sentences and the increasingly rare occurrence of 30-year sentences (Doc. 153 at 26–27.) Second, he argues that his history and

- 15 -

characteristics, namely, "his personal history, . . . his age, the amount of time he has served, and the significant degree of community support that he has received and will continue to receive upon release," and his completion of many educational courses while incarcerated weigh in favor of a reduced sentence. (Id. at 29.) Third, he asks this court to consider the fact that upon release he plans to serve as the primary caretaker for his ailing grandmother. (Id.)

As discussed previously, the original sentence of 360 months was a sentence at the low-end of the applicable Guideline range. Although a number of changes to the Guidelines have resulted in a reduction of the applicable Guideline range if Defendant were sentenced today, there is no dispute as to the nature and circumstances of the offense, nor is there a dispute as to the seriousness of the offense.

The conspiracy at issue was alleged to have occurred from 2002 through the date of the indictment, July 31, 2007. (Doc. 123 at 3.) While the parties stipulated to a drug weight of 82 kilograms of cocaine hydrochloride and 21 pounds of marijuana,

(Doc. 15 at 1; Doc. 136 at 4),[9] the drug distribution in which Defendant participated was far-reaching, involving what appears to have been the extended distribution not only of cocaine, but also of marijuana, (Doc. 123 ¶ 27 ("100 pounds of marijuana on each trip"), ¶ 28 ("unknown quantity of marijuana in hidden compartments")), and crack cocaine, (Doc. 123 ¶ 43 ("Defendant Barr asked Mr. Steele if the cocaine hydrochloride was 'cooking up properly' and whether 'the customers liked it'"), ¶ 44 ("Mr. Steele 'cooked' the cocaine hydrochloride into cocaine base 'crack' with Defendant Barr present")). Relatedly, Defendant consented to the entry of a forfeiture money judgment in the amount of $2,000,000.00, (Doc. 11 at 4), further evidence of the extensive and profitable nature of Defendant's drug distribution.

Defendant's offense level was increased by four because he was "an organizer or leader of a criminal activity that involved 5 or more participants." (Doc. 123 ¶ 71.) This leadership role likely understates the extensive nature of Defendant's role in

---

[9] Based on the high quantity of powder cocaine that Defendant pleaded to and was held responsible for at sentencing, the persuasiveness of his argument that the purpose of the First Sentencing and First Step Acts support a sentence reduction is limited — as described by the U.S. Probation Officer, "[t]he Fair Sentencing Act statutory penalty changes applied retroactively do not appear to change the applicable statutory penalties in this case since Defendant Barr's offense of conviction involved 5 kilograms or more of cocaine hydrochloride, which was not modified by the Fair Sentencing Act." (Doc. 154 at 2.)

- 17 -

the offense to some degree, as the number of participants identified in the investigation, both as to transportation and distribution of controlled substances, as well as money laundering, was extensive. (See Doc. 123 ¶¶ 22-64.)

The money laundering served to enrich Defendant with jewelry and other material purchases. (See, e.g., Doc. 123 ¶ 49.) Mr. Barr, on one occasion, paid $113,000 to Liberty Jewelry to purchase a chain, charm, and watch, (id.); the chain was a special order with a "B-MAC" charm, (id.). The jewelry and cars Defendant purchased seem to have served an additional purpose of making Defendant appear as a notable and wealthy figure in Winston-Salem. Carlos Gibbs delivered drugs for Defendant and recalled meeting Defendant in a club:

> He believed the defendant owned a record company and he had seen Defendant Barr in possession of between $20,000 and $30,000 on three or four occasions. He also saw Defendant Barr wearing expensive jewelry, including a "B-Mac" chain made of diamonds. Mr. Gibbs saw Defendant Barr at Lamar Moore's apartment on several occasions and knew Defendant Barr drove a Mercedes Benz, a Dodge Charger, and a Dodge Magnum.

(Id. ¶ 36.)

The United States characterized Defendant as "for many years . . . the largest drug dealer in Winston-Salem, given the volume of narcotics that he was moving in that city." (Doc. 27 at 14.) Defendant's illicit wealth, used in part to promote an open and grandiose lifestyle, the extensive nature of his drug

- 18 -

distribution, and the fact that he committed the relevant offense while on probation, (see Doc. 123 ¶ 92), all reflect a complete lack of respect for the law, a substantial need for specific and general deterrence, and a substantial need for the sentence imposed to reflect the seriousness of the offense.

Defendant's history and characteristics include significant support from family, friends, and other positive characteristics. (See Doc. 153-2.) However, those positive characteristics are outweighed by a very serious criminal history which is not fully accounted for by the revised Guideline calculation. For example, Defendant's conviction in 1999 for "Attempted Assault with a Deadly Weapon Inflicting Serious Injury" is no longer considered a "crime of violence" under the categorical approach. However, the facts described in the Presentence Report state that "[t]he defendant assaulted Antoine Kenard Cureton on June 25, 1999, with a 9mm pistol with intent to kill and inflict serious injury." (Doc. 123 ¶ 85.) This clearly establishes an intentional mental state, not a mental state less than recklessness. Although not a categorical crime of violence, the offense was violent.

Defendant's history and characteristics, from 2002 through 2007, include substantial criminal activity detailed in the offense conduct. Finally, Defendant's post-offense conduct is at best characterized as mixed. Defendant has participated in many

- 19 -

educational courses for a total of over 1,200 hours. (See Doc. 157 at 7; see Doc. 153-3.) This is a positive accomplishment. However, since 2010, Defendant has been accountable for six relatively serious disciplinary violations, a matter which reflects a continued unwillingness to abide by the rules of conduct within the Bureau of Prisons. Those infractions include Possessing Drugs or Alcohol, (2014), and Fighting with Another Person and Refusing to Obey an Order, (2023). (Doc. 154 at 3-4.) That conduct, particularly the 2023 offenses, is concerning because Defendant, prior to these incidents, contended in his pleadings in this court that he "would pose no danger to any person, the community, or that he would engage in future criminal activity." (See Doc. 137 at 4-5.)

Upon consideration of all relevant facts and the factors contained in 18 U.S.C. § 3553(a), the majority of factors suggest a reduction of sentence is not appropriate here. However, one of those factors contained in 18 U.S.C. § 3553(a) is "the need for the sentence imposed . . . to promote respect for the law." 18 U.S.C. § 3553(2)(A). Promoting respect for the law is subject to a broad interpretation. Defendant's criminal conduct reflects a complete lack of respect for the law, requiring a lengthy sentence. On the other hand, the sentence imposed, and the related application of 18 U.S.C. § 3553(a), requires an analysis

- 20 -

and sentence that also promotes respect for the law from a
defendant's perspective. Here, Defendant's sentence was
originally imposed as a Guidelines range sentence, and several
of the driving Guidelines provisions have since been amended.
Because Defendant's original sentence was fashioned according to
the Guidelines, this court finds Defendant's sentence should be
reduced in accordance with the relevant changes to the
Guidelines.

However, at a substantially lower Guideline range, this
court does not find that a sentence at the low end of the
Guideline range, as calculated today, 262-327 months, is
sufficient to fully reflect the applicable 3553(a) factors. At
the reduced range, this court finds a sentence toward the high
end of that range is sufficient but not greater than necessary.
This court finds Defendant's sentence should be reduced from 360
months to 312 months but not less than time served. The term of
supervised release is reduced to five years.

This court has considered the relevant § 3553(a) factors
and Defendant's arguments under both § 3582(c)(1)(B) and §
3582(c)(2) and finds that a reduced sentence of 312 months but
not less than time served and a reduced term of supervised
release of five years is appropriate.

### III. CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant's Motion for Sentence Reduction Pursuant to 18 U.S.C. §§ 3582(c)(1), (2), (Doc. 153), is **GRANTED** and Defendant's sentence is reduced to 312 months but not less than time served, and his term of supervised release is reduced to five years.

**IT IS FURTHER ORDERED** that Defendant's prior motions, (Docs. 137, 148), are **DENIED AS MOOT**, in light of this court's ruling as described above. Defendant's motions to expand the record, (Docs. 139, 145) are **GRANTED**.

This the 22nd day of April, 2025.

_____
United States District Judge